Poplar Bluff Printing Company v. Commissioner.
Poplar Bluff Printing Co. v. Commissioner
Docket No. 3352.
United States Tax Court
1944 Tax Ct. Memo LEXIS 172; 3 T.C.M. (CCH) 726; T.C.M. (RIA) 44238; July 22, 1944
*172 Allen L. Oliver, Esq., for the petitioner. J. E. Marshall, Esq., for the respondent. SMITH Memorandum Opinion SMITH, Judge: This proceeding involves income and declared value excess profits tax deficiencies for 1939, 1940 and 1941 as follows: Declared Value
Excess
Year
Income Tax
Profits Tax
1939
$ 155.41
$ 169.54
1940
650.00
665.64
1941
1,620.90
1,137.84
The only question in issue is whether during the taxable years involved petitioner was an association taxable as a corporation. Some of the facts have been stipulated. [The Facts] Petitioner is engaged in the publishing and printing business at Poplar Bluff, Missouri. It filed partnership returns for the taxable years involved with the collector of internal revenue for the first district of Missouri at St. Louis. Petitioner publishes a daily and two weekly newspapers and also operates a public printing plant and an office supply department. The business was organized as a corporation under the laws of the State of Missouri in 1916 with an authorized capital of $5,000, divided into 50 shares of common stock of a par value of $100 each. Its organizer and principal stockholder was J. H. Wolpers *173 who had previously taught school and published a weekly newspaper at Bonne Terre, Missouri. His wife, who had also been a school teacher, helped him with his newspaper work. They moved to Poplar Bluff in 1916, buying a small weekly newspaper and organizing the corporation to continue its publication. They both worked long hours in preparing and publishing the paper and hired help whenever they had sufficient funds. From this small beginning the business grew steadily and in 1923 Wolpers decided to begin publishing a daily paper. To obtain the capital for the necessary equipment the corporation's authorized capital stock was increased to $30,000, divided into 300 shares of a par value of $100 each. Two hundred and forty of such shares were issued and were outstanding at the close of 1936 as follows: Shares
J. H. Wolpers
182
Grace Wolpers (daughter)
5
Mrs. Hattie Wolpers (wife)
2
Henry Wolpers (son)
2
Bob Wolpers (son)
2
Allen Wolpers (son)
2
Rose Saracini
1
F. P. Jacobs
1
J. C. Corrigan
20
Mrs. F. M. Kinder (sister of J. H. l(Wolpers)
7
F. M. Kinder
5
Ed Abingdon
5
Jim Hendrickson
2
Ira Walker
1
P. M. Wilson (Cora Wilson)
2
W. M. Smothers
1
On or about *174 December 30, 1936, the stockholders voted to dissolve the corporation and on that date entered into the following agreement: We the undersigned owners and shareholders of the Poplar Bluff Printing Company, having dissolved the corporation known by that name, in accordance with the laws, and having decided to carry on said business as a partnership under the trade name of Poplar Bluff Printing Company, do hereby agree as follows, to-wit: "'1st. That J. H. Wolpers shall be the managing executive of said company. "'2nd. That all real estate formerly owned by the corporation shall be held in the name of the said J. H. Wolpers as Trustee for the said Poplar Bluff Printing Company, a copartnership. "'3rd. That the said J. H. Wolpers shall cause to be issued to each of the copartners, negotiable certificates, setting out the interest of each of the undersigned, and each of the undersigned hereby agrees to be bound thereby as to the extent of the ownership of each of the parties hereto. "'4th. It is further mutually agreed between all of the parties hereto that should any copartner other than the said J. H. Wolpers desire to dispose of his interest in said copartnership, such partner *175 will first offer to the said J. H. Wolpers his interest in said partnership at such price as may be available to said partner from others and the said J. H. Wolpers agrees to at any time purchase the interest of any other partner at whatever price the inventory last available, shows such interest to be worth, according to the books and records of said copartnership, and that the said J. H. Wolpers shall have the first option to buy the interest of any other partner who desires to sell at any other price, and these rights shall extend to the heirs of the said J. H. Wolpers in case of his death. "'That none of the partners shall be required to bear or pay any of the liabilities of this partnership so long as there exists any property of the partnership unliquidated. "'This agreement made and entered into on this 30th day of December, A.D., 1936.'" All of the above named stockholders executed the agreement and were issued certificates in the following form: "No. - Shares A Co-Partnership Poplar Bluff Printing Company Poplar Bluff, Missouri
"This Certifies That is a co-partner in the Poplar Bluff Printing Company and is the owner of - interest in the assets and profits *176 in said Partnership. "IN WITNESS WHEREOF, the said Partnership has caused this Certificate to be signed by its Executive Officer and General Manager, this day of A.D. 19 ." The real estate mentioned in the above agreement was conveyed by the corporation to J. H. Wolpers, trustee, by deed registered with the Recorder of Deeds for Butler County, Missouri, on March 29, 1937. The stockholders paid the income tax for which they became liable by reason of the liquidation of the corporation in 1936. After its disincorporation petitioner continued its operations without any important changes. The business was organized into several departments, each of which was under the management of one of the above named stockholders as follows: City Editor
Jim Hendrickson
Bookkeeping Accounts
Geraldine Mengel
Circulation
Rose Saracini
Advertising
J. P. Jacobs
Commercial Printing
Robert Wolpers
Six of the above named stockholders were never officers or employees of the petitioner. The following table shows the ownership of the beneficial interests in petitioner throughout the years 1936 to 1941, inclusive: 1936
1937
1938
1939
1940
1941
J. H. Wolpers
182
178
182
181
181
89
Grace Wolpers (Standard)
5
5
5
5
5
5
Mrs. Hattie Wolpers (Mrs. J. H.)
2
2
2
2
2
89
Henry Wolpers
2
2
2
2
2
2
Bob Wolpers
2
2
2
2
2
3
Alan Wolpers
2
2
2
2
2
3
J. P. Jacobs
1
1
1
1
1
J. C. Corrigan
20
20
20
20
20
20
Mrs. F. M. Kinder
7
7
7
7
7
12
F. M. Kinder
5
5
5
5
5
Ed Abingdon
5
5
Jim Hendrickson
2
2
2
2
2
2
Ira Walker
1
1
1
1
1
P. M. Wilson (Cora Wilson)
2
4
4
4
4
4
W. M. Smothers
1
1
Rose Saracini
1
1
2
2
2
3
Dorothy McFall
2
2
2
2
2
Geraldine Mengel
1
1
1
2
Roberts V. Stanard
1
1
1
2
Blanche B. Wolpers
1
Total
240
240
240
240
240
240
*177 J. H. Wolpers was general manager of the business until some time in 1942 when, because of ill health, he was succeeded by his son Robert. It was necessary at all times to maintain close coordination between all of the different departments of the business and frequent meetings of the department managers and employees were held for that purpose. All of petitioner's funds were kept in a bank account in the name of Poplar Bluff Printing Co. Only the general manager was authorized to draw checks on the account. Petitioner's employees were all paid weekly salaries. The net earnings of the business except for a reserve fund for equipment and expansion were distributed annually to the certificate holders of record in proportion to their holdings. We think that the respondent's determination that petitioner was an association taxable as a corporation is in accordance with the decisions of the Supreme Court in ; ; , and like cases in that *178 and the lower courts. The following summary of the Morrissey case was made by the Supreme Court in : * * * The trust reviewed in the Morrissey case was essentially unlike that now under consideration. There the trust was a medium for the carrying on of a business enterprise by the trustees and participation in the profits by numerous beneficiaries whose interests were represented by transferrable share certificates, thus permitting the introduction of new participants without affecting the continuity of the plan. The certificates represented both preferred and common shares. We pointed out that the corporate analogy was evidenced by centralized control, continuity and limited liability, as well as by the issue of transferrable certificates; and we said ( that the word "association" implies associates. "It implies the entering into a joint enterprise, and, as the applicable [departmental] regulation imports, an enterprise for the transaction of business. * * *" That petitioner *179 was a business enterprise organized and operated for the purpose of making a profit for distribution to the shareholders can not be denied. Management of the business was centralized in a general manager and the heads of the several departments. The continuity of the enterprise was not affected by the transfer of beneficial interests. The only restriction on such transfers was that any holder desiring to dispose of his interest must first offer it to J. H. Wolpers. The evidence indicates that both during and after petitioner's incorporation the business was run for the most part by J. H. Wolpers, at least until his resignation as general manager. The instant case is similar to . The court's statement of the facts in that case reads in part as follows: The instrument itself is quite unique. It is easy to gather from it the motive and purpose. From it we see that Cyrus F. Howard had been engaged as an individual in the business of buying, selling, receiving and handling for collection all kinds of accounts, domestic and foreign notes, mortgages, and evidences of indebtedness *180 of any nature or kind, for which he charged a commission. He deemed it advisable to give his employees the opportunity to buy interests therein. At the same time, he intended to retain control. The instrument sought to carry out these purposes in the manner following. The value of the business at the time was agreed to be $25,000 and eight employees were allowed to buy interests therein in amounts ranging from $100 to $5,000 with a total valuation of $7,800. The interest of each of these participants was required to be represented by "a certificate of ownership" to be issued by Howard. Those certificates were non-negotiable except with the consent of Howard indorsed thereon; were transferable only on the books of the concern; could be revoked by Howard on payment therefor by him; must be transferred if the holder discontinued his services with the concern; and no additional interests were purchasable or new shares issuable without the consent of Howard. The arrangement was to continue for approximately ten years "or for a longer period, unless otherwise terminated by" Howard. Howard was to be "general manager" until he should resign. Dividends from earnings were to be declared and *181 distributed annually with the consent of Howard. Money might be borrowed with his consent. Profits might be accumulated and used in the business with his consent. * * * The court held upon authority of the Morrissey case and other that there was an association taxable as a corporation. Whether the taxpayer was a copartnership under the laws of Nebraska, as it claimed, was not important, the court said, citing . Petitioner makes the argument here that it was a copartnership under the laws of the State of Missouri and should be so recognized for Federal income tax purposes. In , a jointstock association, which under the laws of the State of Texas was technically a partnership, its members being liable individually for its debts, was held an association taxable as a corporation. In its opinion the court said: * * * The definition given to the term "corporation" in section 1 applies to the entire act. The language of the section presents no ambiguity. Nor is there any inconsistency between that section and sections 218 (a) *182 and 335 (c), which refer specifically to the taxation of partnerships. The term partnership as used in these sections obviously refers only to ordinary partnerships. Unincorporated jointstock associations, although technically partnerships under the law of many states, are not in common parlance referred to as such. They have usually a fixed capital stock divided into shares represented by certificates transferable only upon the books of the company, manage their affairs by a board of directors and executive officers and conduct their business in the general form and mode of procedure of a corporation. Because of this resemblance in form and effectiveness, these business organizations are subjected by the act to these taxes as corporations. While petitioner here had no designated board of directors it did have managers of its several departments who consulted with the general manager in determining matters affecting the conduct of the business. We think that in its organization and in the methods by which it conducted its business petitioner's corporate resemblance was sufficient to meet the test. The evidence is that after it was organized into a so-called partnership it conducted *183 its business in the same manner as it had during its incorporation. We think that the respondent correctly determined that petitioner was an association taxable as a corporation. Decision will be entered for the respondent.